John F. Smith and Henry R. Antrim, Trustees of Estate of Daniel C. Stover, Deceased, Plaintiffs, v. Porter C. Stover, et al., Defendants.

Gen. No. 11,020.

Second District.

October 9, 1957.

Released for publication November 19, 1957.

Ralph M. Eaton, of Mt. Carroll, and Seyfarth and Atwood, of Chicago (Ralph M. Eaton, Karl Edwin

Seyfarth, and Benton Atwood, of counsel) for Stover C. Winger, objecting beneficiary-appellant.

Franklin J. Stransky, of Chicago, for said reporting trustees-appellees.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

By the provisions of his will, Daniel C. Stover created a testamentary trust, designated three trustees to administer the same and fixed their compensation. Following his death on January 17, 1908, his will was duly admitted to probate by the Probate Court of Stephenson county. Its validity was contested and sustained as disclosed by a reference to Altemeier v. Harris, 403 Ill. 345, 347. On April 27, 1916, the surviving trustees invoked the jurisdiction of the Circuit Court of Stephenson county and filed therein their complaint asking the court to take jurisdiction of the trust and for other relief. A decree was thereafter entered granting the requested relief and the trust is being administered under the direction of that court. In 1923 the trustees filed their bill to construe certain provisions of the will and thereafter the decree of the chancellor was affirmed by the Supreme Court (Smith v. Thomas, 317 Ill. 150).

On June 4, 1928, the then trustees filed their petition reciting, among other things, that the will of Daniel C. Stover provided that each trustee should receive $1,200 per year for services as trustee and averring that the character of the services they were requested to render were unusual and extraordinary and praying that the reasonable and just value of their services be ascertained, fixed and ordered paid by the court. Upon a hearing, an order was entered directing that each trustee receive an annual salary of $4,000. This order was thereafter reversed by this court (Smith v. Stover, 262 Ill. App. 440).

Upon the mandate of this court being filed in the circuit court, a supplemental petition by the trustees was filed on January 23, 1932, which averred, among other things, that since the decision of this court, Mary S. Thomas and Porter C. Stover, children of Daniel C. Stover, deceased, and principal beneficiaries under said trust, together with other beneficiaries, have executed in writing their requests that the court allow to each trustee for their services as trustees the sum of $4,000 exclusive of general office expense, traveling expenses, and clerk hire, beginning May 1, 1928, and continuing until the further order of the court. Answers were thereafter filed, and upon a hearing an order was entered finding that after the administration and settlement of the estate of Daniel C. Stover and after the payment of all claims and cost of administration of his estate the net amount of the estate which came into the hands of the original trustees was $614,774.76 and that the property of the estate was of such kind and character that it required a comparatively small amount of time, labor and attention from the trustees; that due to the careful management and conservation of the assets of the estate the value thereof had increased to $2,250,432.28 as of January 1, 1932; that the supervision of these assets required more than four times as much time, labor and attention than was necessary to be devoted in the management of the investments of the original trust estate; that the trustees were then supervising the management of forty-eight farms and in order to keep in constant touch with these farms and other farms upon which loans had been made by the trustees, it was necessary for the trustees to make numerous trips to these farms located in Stephenson and adjoining counties in Illinois and in the states of South Dakota, North Dakota, Iowa, Nebraska, Minnesota and Montana. This order found that $715,268.86 of the assets of the estate were invested in bonds of seventy-

four separate and distinct issues. It made further extensive findings and concluded by ordering that "for the reasons hereinbefore set forth, the compensation of each of said trustees be and the same is hereby increased to the sum of $4,000 per annum over and above general office expense, traveling expenses and clerk hire, beginning May 1, 1928, and continuing until the further order of this court." This order was not appealed from and has in no way been modified or altered.

On November 10, 1955, the trustees filed in the circuit court their sixty-five page verified report of receipts and expenditures from September 30, 1952, to September 30, 1955. This report disclosed that at the beginning of the period the trustees had on hand $17,075.36 and received from all sources during the three-year period the sum of $944,650.94, making a total of $961,726.30, and disbursed during the same period $916,243.96, leaving a balance of receipts above disbursements at the close of the period of $45,482.34, which was deposited in the State Bank of Freeport. In addition to this amount the report showed that the trustees had to their credit in the Northern Trust Company of Chicago $293.62 and in the First National Bank of Chicago $803.76, increasing the total amount on hand to $46,579.72. Accompanying this report was a notice directed to the surviving grandchildren and beneficiaries of the trust to the effect that this report would remain on file in the clerk's office, subject to inspection until December 12, 1955, at which time the trustees would move the court to confirm all matters referred to therein and enter an order approving said report.

Among the disbursements disclosed by the report of the trustees are (a) sixteen payments of $203 each, beginning with October 1952 and continuing each month through December 1953. These disbursements aggregate $3,248. There are also twenty payments

81

of $204 each, beginning with January 1954 and continuing each month through August 1955, which aggregate $4,080. All of these disbursements were made to trustee Knowlton for secretarial services and total $7,238 for the thirty-six months covered by the report. (b) The payment to William Kness of $100 in 1952, designated on the report as Fahrney-Knipple farm management fee, also nine separate items of $100 each, paid in 1953, 1954 and 1955 to Kness; three of these are designated as Peugh-Weed farm management fee, three are designated as Fahrney-Knipple farm management fee and the other three are designated as Wolfensberger farm management fee. These ten payments aggregate $1,000. (c) The payment of $243.52, of which amount $206.77 was expended for moving bonds to Chicago for safekeeping, $12.27 paid for exchange and $24.88 paid to trustee Knowlton for use of car and inspecting farms. (d) The payment of $1,978.05 for safekeeping fees. (e) The payment to the State Bank of Freeport of $75 each month for rent until January 1, 1954. The payment to said bank of $93 each month for rent during 1954 and the further payment for rent each month during the year 1955 to said bank of $108. These items aggregate $3,213. (f) The payment of various itemized amounts for office stationery and supplies aggregating $704.32. (g) The payment of various itemized amounts aggregating $356.55 for telephone service and electricity. (h) The retention each month of various sums by the trustees for their services during the three-year period, which, with the amount withheld for taxes, aggregate $35,666.65.

To the approval of this report, Stover C. Winger, a grandson of Daniel C. Stover and a beneficiary, filed his verified objections. These objections were to the form of the report, to inaccurate arithmetical computations, to the several disbursements aggregating $14,823.44 by the trustees referred to in the foregoing

82

paragraph and indicated by letters (a) to (g) inclusive and to the retention by the trustees of $35,666.65 for their services. The objections to the several items of expense aggregating $14,823.44 were that all of these items are normally included in the services, facilities and supervision furnished by trustees and for which they are compensated as trustees. The objections to the allowance of $35,666.65 to the trustees for their services were that the report does not describe the nature of the services or the time expended by the trustees and recites that the customary charge of banks, trust companies and qualified trustees for services of the nature performed by the trustees during this accounting period are substantially less than the fees taken by these trustees and if the condition of the trust and the services rendered by the trustees be taken into consideration their fees are exorbitant and grossly excessive.

. Thereafter, by leave of court, the trustees filed an amendment to their report in which they stated that they did so in order to rectify certain typographical errors, explain some of the charges made, and to obviate certain of the objections filed by Stover C. Winger. In this amendment, the trustees stated in explanation of disbursement (a) that trustee Knowlton was paid $200 per month for services as secretary and that out of this amount he paid for stenographic services. As to disbursement (b), the amendment stated that William Kness of Lanark, Illinois, was paid $1,000 for assisting in the management of three Illinois farms, his charge being $100 per year for each farm. As to disbursement (c), the trustees stated that these sums were expended for collection charges made by banks and attorneys and for mileage charged in inspecting properties. As to disbursement (d), the trustees stated that this charge represents fees paid the First National Bank of Chicago for safekeeping negotiable assets. As to disbursement (e), the trustees

83

stated that the same office rent had been paid by the trustees since 1916 and that no objection had ever been made to that item. As to disbursements (f) and (g), the trustees stated that the charges for trustees' stationery, office supplies, telephone service and electricity were the normal expenses of the trustees and had never before been objected to.

This amendment to the report of the trustees set out the findings and order entered in the administration of this trust on April 29, 1932, above referred to; and averred that said order has remained continuously in force and effect since the entry thereof; that M. B. Antrim, one of the present trustees, was specifically mentioned in said decree of April 29, 1932, and that said successor trustees, Kenneth H. Knowlton and Robert N. Seeley, whose appointments have been approved by the court, accepted the trusteeship of said estate in conjunction with said M. B. Antrim and have performed the duties and responsibilities of said trusteeship from the date of their several appointments up to and including the present time with the understanding that the compensation of each, over and above general office expense, traveling expense and clerk hire, would be $4,000 each per annum.

This amendment then continued: "These Successor Trustees further represent that the value of the assets of said Trust, as hereinabove set forth, has, in accordance with said audit for the year ending December 31, 1955, made by Albert T. Bacon & Co., increased to $2,317,454.09, over and above the expenses of said Trust, including said sum of $4,000 per annum paid to each of said Trustees, plus general office expense, traveling expense and clerk hire, and the amounts paid to the beneficiaries of the Trust under orders of this Court.

"These Successor Trustees, further answering said objections, represent to the Court that at the time of the entry of said decree by this Court on April 29, 1932,

Ethel S. Altemeier was one of the Trustees of said trust estate and also performed the clerical work involved in the supervision and management of said trust estate, for which service she was paid, up to the time of her death, the sum of $200.00 per month as secretary of said Trustees in addition to said sum of $4,000.00 per annum paid to her as compensation for work and responsibilities involved in acting as one of said Trustees and that Kenneth H. Knowlton has, since he became one of the Successor Trustees of said estate, acted in the capacity of clerk or secretary to said Successor Trustees and has been paid the sum of $200.00 per month (less withholding and social security deductions) for services as such clerk or secretary in addition to the sum of $4,000.00 per annum, in accordance with said decree of April 29, 1932, and that he is entitled, under said decree, to such payments."

In their amendment to their report the trustees then insisted that by simply filing objections to their report the objector could not question the reasonableness of the amount retained by the trustees for their services or have determined any question about general office expense, traveling expense and clerk hire, inasmuch as these questions were determined in a direct proceeding brought by the trustees which culminated in the order of April 29, 1932. The trustees denied that any of the items objected to were customarily paid or assumed by trustees of trust estate and called attention to the fact that since the entry of the order on April 29, 1932, the amount received as compensation for services of all kinds and character by people in every walk of life has greatly increased and that living expenses have very materially increased, and the purchasing value of the dollar has decreased to approximately one-half of what it was worth in 1932 and insisted that these facts should be taken into consideration by this court in this case in determining whether the charges made by said successor trustees for their services as set forth in their

85

report were proper charges. The trustees then denied that their work is largely of a routine character and denied that any substantial part of the management of the real estate and collection of income are done by others than the trustees.

The record further discloses that thereafter a motion was filed by the objector to strike portions of the trustees' answer to his objections. This motion was heard and denied and the trustees were then granted leave to file a supplemental amendment to their report, to which the objector filed a "reply." This "reply" reiterates the position of the objector that the trustees' fees are excessive, stating that they amounted to nearly 35 per cent of the net income of the estate and more than 16 per cent of the gross income during the reporting period. This "reply" renews objector's objection to the allowance of $14,823.44 for secretarial services, management fees, safekeeping fees, office rent, stationery, telephone and electricity.

The record further discloses that on May 4, 1956, the trustees filed a further instrument designated as an answer to new matters set up in the objector's "reply." This answer again sets forth a portion of the decree of April 29, 1932, and insists that the trustees' fees and additional payments by the trustees, as set forth in their report, are in accordance with the provisions of that decree. To this further answer of the trustees, the objector, on May 13, 1956, filed, by leave of court, a pleading designated, "Objector's reply and motion to strike the answer of successor trustees." In this pleading the objector denied that the payments for secretarial services and the other enumerated expenses of the trustees were just and proper charges and avers that they should not be paid in addition to trustees' fees, denies that the 1932 decree has anything to do with the compensation of the trustees for the current period, denies that the objector is estopped from questioning the propriety or reasonableness of the fees

which the trustees are asking the court to approve, but states that if he is, that "then his objections to the current report and his subsequent pleadings relating thereto should be taken and construed by the court to be his application for a modification of said decree."

Thereafter, the trustees, after notice to counsel for objector, filed a motion on May 24, 1956, which recited that all pleadings desired to be filed in this case by the objector and by the trustees had been filed; that this "cause is now ready for (a) disposition by this court of the various motions to strike contained in said pleadings and (b) for the taking of testimony of witnesses and the introduction of documentary evidence bearing on the various questions of law and fact involved in this cause; that in order to expedite the decision of the questions of law and fact here involved and in order to avoid unnecessary expense to the parties to this cause and to save time for both the court and counsel, it is proper and necessary that both (a) and (b) be heard and disposed of at the same hearing." By this motion the trustees requested the court to set down for hearing on a day certain "(a) the various motions to strike contained in said pleadings of said successor trustees and of said objector and (b) the taking of testimony of witnesses and the introduction of documentary evidence bearing on various questions of law and fact involved in this cause."

With the record in this condition and without hearing any evidence, the chancellor, on July 6, 1956, entered an order, which, after referring to the voluminous pleadings of the respective parties, stated that the court heard the arguments of counsel and being fully advised in the premises, found "(1) That it has jurisdiction of the subject matter of this cause and of all persons interested therein; (2) that the equities in this cause are in favor of said Successor Trustees; and, (3), that upon such hearing of this cause, no evidence was offered by either said Successor Trustees or by

said Objector, Stover C. Winger, the ruling of this Court being based on the Report of said Successor Trustees, as amended, and upon the pleadings hereinabove set forth." This order then concluded: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED: (a) that judgment on the pleadings filed in this cause be and the same is hereby entered in favor of said Successor Trustees and against said objector, Stover G. Winger; (b) that said report, as amended, of said Successor Trustees, of receipts and disbursements of said Trust from September 30, 1952, the date of their last report, to September 30, 1955, inclusive, be and the same is hereby approved." To reverse this order objector, Stover C. Winger, appeals.

Counsel for appellant insists that the trustees are not entitled to receive any sum in excess of the $1,200 as provided in the will of Daniel C. Stover, the creator of the trust, notwithstanding the provisions of the 1932 decree in the absence of any showing that the fees taken by the trustees as shown by their report, are reasonable under the present condition of the corpus of the trust. It is further insisted that without any proof as to their necessity or reasonableness, the objections to the several disbursements aggregating $14,823.44 should have been sustained. Counsel insist that the position of Kenneth H. Knowlton, as trustee, precludes the further allowance to him of $7,328 for secretarial service.

To sustain the order of the trial court, counsel for appellees insist that the 1932 decree fixed the compensation of each trustee at the sum of $4,000 per annum for an indefinite period and that this sum was in addition to general office expense, traveling expenses and clerk hire. It is further insisted that the emergency and exigency found to exist in the 1932 decree and which led to the substitution of $4,000 as the fee of each trustee in lieu of the $1,200 per year, as provided in the will of Daniel C. Stover, will be presumed to

continue to exist unless the contrary is shown by the party who claims such conditions have changed. Counsel state that the burden of proof to establish his objections was on the objector; that the objector had an opportunity in the trial court to request the chancellor to hear evidence in support of his objections but did not do so, and, as he did not sustain or offer to sustain his objections by evidence, the order appealed from should be affirmed.

In Wylie v. Bushnell, 277 Ill. 484, it appeared that Oscar H. Wylie, the plaintiff-in-error, had filed a bill in the Circuit Court of Ford county to obtain the direction and advice of the circuit court in the administration of a trust estate and for the approval of his report, as trustee, of receipts and disbursements. Thereafter Allen S. Bushnell, a beneficiary of the trust, filed a bill asking for the removal of Wylie as trustee on the grounds of incompetence, unfairness, mismanagement of the estate, and failure to make reports as executor and trustee. These cases were consolidated in the trial court, and it was ordered that the complaint of Bushnell, the beneficiary, should stand as a cross-bill. A hearing was had resulting in a decree removing Wylie as trustee after his reports as executor and trustee had been approved by the proper courts.

The appellate court affirmed the decree, and, in reversing the judgment of the appellate court and the decree of the circuit court, the Supreme Court said (pp. 506–7) : "We do not agree with counsel for plaintiff in error (Wylie, the trustee) that the burden necessarily rested upon defendants in error to establish, by a preponderance of the evidence, all the allegations of the cross-bill that plaintiff in error had failed to account for all moneys received by him as trustee. The burden is on the trustee to make a satisfactory and proper accounting of the money in his hands, and to maintain a suit against him it is not necessary to

■■■■

show affirmatively that there has been a failure to account for money belonging to his beneficiary. The general rule is, that the trustee has the burden of showing that the accounts which he renders and his statements of receipts and disbursements are correct and were just and were necessary. No hardship is imposed upon him in requiring that he make such a showing rather than to cast the burden upon the cestui que trust." The court then concluded (p. 511): "It is the duty of plaintiff in error (Wylie, the executor and trustee) to use every effort to close up his duties as executor as soon as possible and have his reports approved by the county court, and then to expedite in every way possible, under the direction of the circuit court, the making of a complete report to date of his acts and doings as trustee, the burden of proof resting upon him in each case to show the truth of the items in such reports."

In Nonnast v. Northern Trust Co., 374 Ill. 248, the opinion, at pp. 260, 261, quoted Perry on Trusts and Trustees, Seventh Edition, p. 1397, where it is said: "A trustee or executor is bound to keep clear, distinct, and accurate accounts. If he does not, all presumptions are against him, and all obscurities and doubts are to be taken adversely to him. (The burden of proof is upon a trustee to show that the charges or expense for which he claims credit upon an accounting were proper disbursements.)"

In re Walter Butler's Trusts, 223 Minn. 196, 26 N.W. 2d 204, 172 A. L. R. 977, the trustee had filed its petition in the District Court seeking an interpretation of a trust indenture and for an order finding that certain items of expense incurred by the trustee on account of office expense, clerk hire, attorney fees, and taxes should be allowed as a proper item of expense to the trustee. The instrument creating the trust empowered the trustee to employ clerks and other persons to do and perform such acts and things as they may deem

90

requisite for the proper and convenient execution of the trust. The decree of the District Court held that no part of the salaries paid to certain clerks of the trust company, trustee, nor any part of the rent for office space, as well as expenditures by the trustee for light, general and ordinary telephone service and stationery, could be charged against the trust funds involved in that proceeding.

In the course of its opinion in affirming that decree, the Minnesota court stated that the primary objective of the settlor was to protect and benefit the cestuis and not the trustee and then said: "The fact that the settlor named as trustee a trust company, which, by the guidance of its officers has been so restricted in its operations as to have no business or income aside from that derived from the management of the trusts established by the settlor or the members of his family or that the ownership of the trust company's common stock has changed so as to be practically concentrated in a single stockholder is no justification for placing such trustee in a different compensation classification from that of other corporate or noncorporate trustees. Trusts are not established for the purpose of providing a trustee with its sole means of maintenance. The appointment of a trustee is merely incidental to the fundamental purpose of the trust, which is the protection of the cestuis. . . . In no event may the trustee increase his compensation by delegating to others, at the expense of the estate, the performance of duties for which he, as trustee, is receiving compensation. Trustees are not entitled to extra compensation for their usual and normal services or to reimbursement for expenditures made in employing others to perform such services. 2 Perry, Trusts and Trustees (7th Ed.) sec. 911."

The Minnesota court then quoted section 188, Comment C Restatement, Trusts to the effect that a trustee cannot properly incur expenses by employing agents

91

to do acts which the trustee ought personally to perform, and the court then asks: "What are the usual and normal services to be performed by a trustee in return for his compensation? All services involved in the exercise of his discretionary powers or duties in managing the trust and, in addition, certain ministerial duties are covered by such compensation. Clearly one of the ministrial duties which a trustee should perform in return for his specified remuneration is that involved in the routine chore of keeping accurate and complete bookkeeping records and in preparing periodic administration accounts. 2 Perry, Trusts and Trustees (7th Ed.) Sec. 911."

██ To the amended and supplemental report of the trustees in the instant case, appellant filed his verified objections not only to the several items relating to the fees of the trustees but also to other items aggregating $14,823.44. All these items were unsupported by anything except by the oath of the trustees to the amended and supplemental reports and their oath to the various pleadings of the trustees. It is no answer to these objections to say that the objector had an opportunity to offer evidence in support of his objections. The condition of this record was such that the trustees should have been required by the chancellor to take the initiative and make clear proof of the necessity of the expenditures for which they claim credit on their report. (Crimp v. First Union Trust and Savings Bank, 352 Ill. 93, 102–103.)

In 90 C.J.S. Title Trusts, sec. 408, (b), p. 765, it is said that the burden is on the trustee to prove the facts establishing his right to receive the claimed compensation, the performance of the acts for which compensation is claimed, and he must establish by a preponderance of the evidence that he is entitled to the compensation claimed. The author of this article then continues (p. 166): "It is the duty of the court to require presentation of all the facts and circumstances

■■■■■■■■■

touching the management of the estate, and not to render a decision on the petition and answer only; and the cestuis que trust have the right to be heard in connection with the fixing of compensation. In cases where trustees are allowed a reasonable compensation, reasonableness is a question of fact. The court should take into consideration amounts already paid and chargeable to the trustee."

The same authority, at page 745, says: "It is generally held that trustees are entitled to fair, just, and reasonable compensation in the discretion of the court; and the question of what is a reasonable compensation to trustees depends largely on the circumstances of each particular case, taking into consideration the risk and responsibility incurred, the amount and character of the estate, and the nature and extent of the services necessarily performed, and the statutory rates of compensation for executors and administrators. Proper elements for consideration in fixing compensation have been more specifically stated, and include the value of the property, the size of the income whether large or small, the amount of interest earned, the nature and value of services rendered, the usual price of such services or the amount reasonably contemplated, the ability of the trustee to render a special service, good faith in administering the trust, unexpected profit earned through skill of the trustee, the object which the trust was established to attain, and sometimes, but not usually, the giving of a bond by the trustee."

■■ In the instant case the 1932 decree increased the compensation of each trustee for his services to $4,000 per annum beginning May 1, 1928 and continuing until the further order of the court. Therefore, the trustees were justified in taking credit upon their report for their services in accordance with the provisions of this decree. This amount, as shown by the report, aggregates $35,666.65. The burden of sustain-

ing the objection of appellant to this item rests on appellant.

In the pleading designated as "objector's reply and motion to strike the answer of successor trustees," appellant repeated his objections to the payments for secretarial services and other enumerated expenses of the trustees and insisted that he was not estopped from questioning the reasonableness or propriety of the fees which the trustees were asking the court to approve. This pleading then stated that if the court should so hold that he is so estopped from questioning these items and fees because of the provisions of the 1932 decree, that then he requested the court to take and construe his objections and his several pleadings as an application for a modification of that decree.

Upon remandment, if a formal petition to modify the provisions of the 1932 decree is filed, all interested parties should be brought before the court including the several grandchildren of said Daniel C. Stover, deceased. Any interested party would be entitled to answer the same, and any order entered thereon will become operative upon its rendition in accordance with the provisions of the 1932 decree.

The record in this case requires a full hearing by the chancellor. At this hearing the trustees shall be required to take the initiative and support their report with evidence as to the reasonableness and necessity for the expenditures of the several amounts received by trustee Knowlton, aggregating $7,238; the payments to Wm. Kness aggregating $1,000; the payments for safe-keeping and moving bonds and exchange; the payments to trustee Knowlton for inspecting farms; the expenditures for rent, stationery, supplies, telephone and electricity all objected to by appellant and referred to herein as disbursements (a) to (g) inclusive.

In the absence of any such evidence, and testimony as to the character of the corpus of the estate, its present

94

value, the time required of the trustees and the facilities necessary and requisite for them to properly perform their duties as trustees, the chancellor was in no position to approve the report as submitted and erred in so doing.

The order appealed from is reversed, and this cause is remanded to the Circuit Court of Stephenson county for further proceedings in accordance with the views herein expressed.

Reversed and remanded with instructions.

CROW, J., concurs.