THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* A.M. *et al.*, Minors, Appellant, v. HERLINDA M. *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—89—1376

Opinion filed October 28, 1991.

Patrick T. Murphy, Public Guardian, of Chicago (Kathleen G. Kennedy, of counsel), for appellants.

No brief filed for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Appellant, the public guardian of Cook County, appeals a judgment of the circuit court of Cook County denying the public guardian attorney fees for its representation of minors as a guardian *ad litem* (GAL). For the reasons which follow, we dismiss the appeal.

Araceli M., born on November 16, 1977, and her sister, Linda, born on December 4, 1980, are the two youngest of five children in the M. family. On October 16, 1985, the State filed a petition for an adjudication of wardship regarding Araceli and Linda M. That same day, the parents retained private counsel and the court appointed M.L. Goodman as GAL to represent the minors. The court then proceeded to find probable cause that the minors had been abused and neglected and that it was an urgent and immediate necessity that a temporary custodian for the children be appointed. The court placed the minors in the temporary custody of the Department of Children and Family Services (DCFS).

On October 18, 1985, the court entered a protective order requiring the parents to provide care for the children and cooperate with DCFS requests; prohibiting the father from having contact with or touching the minors; and barring the mother from letting the father into her home. This protective order was later amended on November 17 and December 5, 1985.

The State moved to vacate the protective order on January 17, 1986, alleging that the parents had failed to comply with it. After the parties stipulated to probable cause and urgent and immediate necessity, the State's request was granted. The minors were again placed in the temporary custody of DCFS, and the case was continued pending clinical evaluation of the parents and the minors.

On April 22, 1986, following admissions and stipulations by the parents, the court found abuse based on an injurious environment and ordered a supplemental social investigation.

On August 14, 1986, the GAL petitioned the court to terminate the father's visits with the minors, alleging that the father "perpetrated sexually-oriented acts" on the minors and behaved in a way that the minors needed "further counseling and even psychiatric hospitalization." The same day, the parents, represented by newly substituted counsel, petitioned to vacate the findings and admissions of April 22, 1986. The parents' petition was granted on August 27, 1986.

The court entered an agreed order on September 3, 1986, suspending the father's visitation rights without prejudice, allowing weekly supervised visits by the mother and requiring DCFS to refer the mother for counseling. Five days later, the State again petitioned

for wardship of the minors on the grounds that the minors were subject to abuse and neglect. The mother filed a motion for a bill of particulars. In October 1986, the court heard motions concerning the admissibility of the results of the father's polygraph examination at the upcoming adjudication of wardship.

In November 1986, following a trial, the court found the minors had been abused. On January 22, 1987, the court entered a dispositional order adjudicating the minors as wards of the court and placing them in the guardianship of DCFS. According to the public guardian's brief, on February 2, 1987, the presiding judge of the juvenile division of the circuit court ordered that the public guardian be appointed as attorney and GAL in all cases where M.L. Goodman had been appointed previously.

On June 26, 1987, Sandra Y. Jones petitioned for supplemental relief, alleging that the mother focused affection on some of the children while blaming others and that the father remained in the vicinity of the supervised visits. The mother filed a motion for a bill of particulars; Sandra Y. Jones supplied said bill on July 10, 1987, and an amended bill the following month. The July bill indicates that Sandra Y. Jones is associated with the office of the public guardian. The public guardian, as GAL, later supplied additional documents requested by the mother.

The court entered an agreed order on the petition for supplemental relief on August 13, 1987, which: continued the hearing on the petition; required an agency named Special Persons in Need (SPIN) to assess the family and report to the parties' counsel by September 15, 1987; ordered the parents to sign releases of information to SPIN; ordered SPIN to provide biweekly written reports to the parties; allowed the mother to visit the minors under SPIN's supervision; and ordered the parents to undergo alcohol abuse assessments.

On March 28, 1988, a new attorney filed his appearance for the father. Thirty-one days later, the mother filed a petition for a rule to show cause why DCFS should not be held in contempt for failing to provide her with supervised visitation. The petition alleged that the court had heard during a progress report on the agreed order that SPIN wished to be released from its supervision of the mother's visits and that the GAL was not going to proceed with a supplemental petition to terminate parental visitation.

On May 19, 1988, the GAL subpoenaed Dr. Bonnie Benzies of the Elgin Mental Health Center for a deposition to be held the next day.

On August 21, 1988, the GAL moved to vacate the August 13, 1987, agreed order, stating that SPIN had completed the required as-

sessment. Two days later, the mother filed a supplemental petition for a rule to show cause why DCFS should not be held in contempt for failure to provide her with a guardian's report.

The court entered an agreed order in October 1988 which continued hearing the minors' supplemental petition pending further evaluation, allowed the father to have therapeutic visits with the minors in furtherance of said evaluation, ordered SPIN to provide supervised visits with the mother and required SPIN and a therapist involved in the case to coordinate the assessment visits.

On November 22, 1988, the GAL filed a motion for attorney fees, which states in its entirety:

"NOW COMES the attorney for the minor respondent and respectfully ask that this Court, pursuant to sec. 806—9 of ch. 37 of the Ill. Rev. Stat., order the parents in this case, after a proper hearing, to pay the Office of the Cook County Public Guardian reasonable attorney's fees in an amount of no less than $100.00 per hour for the time that office has spent representing their child."

In conjunction with the motion, the GAL also filed interrogatories and a notice to produce documents relating to the parents' income and their contracts with their own attorneys. The answer to the interrogatories indicated that the parents had paid approximately $2,300 to their attorneys and owed approximately $14,500 in attorney fees; that the father's annual salary was approximately $27,000; and that they owned a home in Chicago which they had purchased in December 1981 for approximately $22,900.

Subsequently, on April 25, 1989, prior to a hearing on the motion for attorney fees, the GAL filed its amended motion for attorney fees, which states in its entirety:

"NOW COMES the attorney for the minor respondent and respectfully ask that this Court, pursuant to sec. 2—17(5) of the Juvenile Court Act ch. 37 of the Ill. Rev. Stat. [Ill. Rev. Stat. 1987, ch. 37, par. 802—17(5)], order the parents in this case, after a proper hearing, to pay the Office of the Cook County Public Guardian reasonable attorney's fees in an amount of no less than $100.00 per hour for the time that office has spent representing their child."

At a hearing on the motion, the trial court asked the GAL what it would do with the monies if the court ordered that the parents pay the fees. The GAL replied that monies collected would be deposited in a general fund specifically set up by the Cook County treasurer. In denying the motion, the trial court held that section 2—17(5) of the Act

applied only to private attorneys and not to the public guardian's office. Appellant's timely appeal followed.

Although no appellee's brief has been filed, we are not precluded from reviewing the case. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.) Nevertheless, before reaching any question which may be raised concerning the legal sufficiency of the fee motion, we have a duty to consider our jurisdiction and to dismiss an appeal if jurisdiction is wanting, even when neither party raises the issue. (*Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 440, 490 N.E.2d 1252, 1253; *Voiland v. Warsawsky* (1989), 182 Ill. App. 3d 332, 334, 538 N.E.2d 764, 765.) During the oral argument in this matter, this court asked counsel whether the denial of attorney fees was a final and appealable order. This court then ordered the public guardian to submit a supplemental memorandum on the jurisdictional basis for this appeal, which we have received and will consider in passing upon our authority to hear the merits of this appeal.

Initially, we recognize that jurisdictionally, juvenile abuse and neglect proceedings are somewhat unusual. The juvenile court may retain jurisdiction over a wardship or guardianship proceeding until the minor involved is 21 years old or until the guardianship is no longer in the best interest of the minor. (See Ill. Rev. Stat. 1987, ch. 37, par. 802—31.) Supplemental proceedings regarding the guardianship may be initiated by the parties (see Ill. Rev. Stat. 1987, ch. 37, par. 802—13) or by the court *sua sponte* (see Ill. Rev. Stat. 1987, ch. 37, par. 802—28). Given the fluid nature of such proceedings, it is perhaps not surprising that there are special rules governing appeals in this area of the law. See, *e.g.*, 134 Ill. 2d Rules 304(b)(1), 306(a)(1)(v).

In its initial brief, the public guardian asserted that this court had jurisdiction under Illinois Supreme Court Rule 303 (134 Ill. 2d R. 303), which provides for appeals from final judgments in civil cases. However, the record shows that this matter was transferred to the guardianship calendar on June 23, 1989, after hearing a progress report subsequent to the denial of the public guardian's fee motion on April 25, 1989. Based on the record, we conclude that the denial of the fee motion was not appealable under Rule 303. We note that none of the cases cited by the public guardian in support of jurisdiction are Rule 303 cases.

The case relied upon by the public guardian in arguing that the denial of fees is a final judgment or order, *In re James J.* (1989), 193 Ill. App. 3d 75, 549 N.E.2d 834, *aff'd* (1991), 142 Ill. 2d 1, 566 N.E.2d 1345, involved the finality of a dismissal of a petition for adjudication

of wardship under Rule 301 as made applicable to a juvenile case pursuant to Rule 660(b). The dismissal of a petition for adjudication of wardship in *James J.*, while purporting to be a dismissal without prejudice, was entered because the trial court believed it lacked authority to order the State's Attorney's office to prosecute the claim. It was therefore clear in *James J.* that the order had the effect of terminating the proceedings; had this court held the order to be unappealable, the minors would have been completely unable to challenge the order. In this case, the record shows that the denial of the fee request did not terminate the proceedings. Under the facts and circumstances in the record, the public guardian cannot appeal this order under Rules 301 and 303.

■■ In its supplemental memorandum, the public guardian argues that the judgment is appealable under Rule 304 (134 Ill. 2d R. 304), which governs appeals from final judgments that do not dispose of an entire proceeding. Rule 304(a) provides that in general, an appeal from a final judgment as to fewer than all the claims or parties may be taken only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal of the judgment. (134 Ill. 2d R. 304(a).) There is no such written finding in this case.

The public guardian argues that a Rule 304(a) finding is not required in this case due to the distinction our courts generally have made between a fee claim brought as part of the principal action and one brought after the principal action has been decided. (See, *e.g.*, *Servio v. Paul Roberts Auto Sales, Inc.* (1991), 211 Ill. App. 3d 751, 759-60, 570 N.E.2d 662, 666-67 (and cases cited therein).) The argument is misplaced. Cases such as *Servio* stand for the proposition that the judgment on the merits may be appealed without a Rule 304(a) finding despite a pending fee claim; they do not speak to the appealability of the fee claim itself.

■■ The public guardian next argues that the denial of its fee request is appealable under Rule 304(b)(1), which states that a special finding is not required for an order "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." (134 Ill. 2d R. 304(b)(1).) In *In re Estate of Kime* (1981), 95 Ill. App. 3d 262, 419 N.E.2d 1246, which involved the administration of an estate, this court discussed the purpose of Rule 304(b)(1), stating:

> "A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate ad-

ministration. Little imagination is needed to conjure up the intolerable consequences of permitting a party, at his option, to wait until an estate administration is concluded before appealing an order, entered perhaps several years previously, which denied a motion to remove an executor or allowed a claim against the estate. In such circumstances, were an appellant successful, then the entire administration might have to be begun again. Thus, in the interests of efficiency and the sound and practical administration of estates, orders in estate proceedings must be appealed within 30 days from entry when they finally determine the right or status of a party, even though they are preliminary to a final settlement of estate proceedings." (*Kime*, 95 Ill. App. 3d at 268, 419 N.E.2d at 1250.)

The *Kime* court's emphasis on efficiency and practicality dovetails with one of the more general purposes of Rule 304—the prevention of piecemeal appeals. See, *e.g., Ariola v. Nigro* (1958), 13 Ill. 2d 200, 148 N.E.2d 787.

Here, the public guardian asserts that "[i]t is not practical for the children's attorney to wait until all of the children in the case become 21 years old and the Juvenile Court proceedings are finally closed to obtain attorney fees." However, as the public guardian has suggested in its supplemental memorandum, a fee request is not an ordinary claim like a claim against an estate. Rather, fee requests are generally collateral or incidental to the principal action. *Servio*, 211 Ill. App. 3d at 759-60, 570 N.E.2d at 666-67.

We do not believe that the denial of the fee request in this case is the type of decision contemplated by Rule 304(b)(1) as interpreted by *Kime*. There is no danger that the trial court's denial of fees will cause the entire proceeding to be relitigated. After all, the very reason fee requests are deemed to be collateral is that the issues involved in adjudicating such requests largely lie outside the issues involved in the principal action. See *Town of Libertyville v. Bank of Waukegan* (1987), 152 Ill. App. 3d 1066, 1073, 504 N.E.2d 1305, 1310.

Moreover, the public guardian's supplemental memorandum argues that its fee request is incidental to the adjudication of wardship entered on January 22, 1987 (instead of incidental to the entire proceeding). Assuming, *arguendo*, that this argument is correct, we note that the record indicates that the public guardian did not move for attorney fees until November 22, 1988. If it is impractical for the public guardian to defer its fee request until the jurisdiction of the trial court is terminated, it seems strange that the public guardian de-

ferred its request for almost two years from the date of the dispositional order.

In addition, this court is unable to determine from the record that the fee request at issue is collateral to the dispositional order. The public guardian has failed to affirmatively demonstrate from the record on appeal that it was involved in the case at the time the dispositional order was entered. Indeed, the public guardian's brief states that Patrick T. Murphy was not appointed in this case until February 2, 1987—11 days after the entry of the dispositional order. The record does not contain an order making said appointment. The first document in the record which identifies the office of the public guardian was the bill of particulars filed in July 1987. That bill identifies Sandra Y. Jones as being associated with the public guardian; her name first appears in the record on the supplemental petition filed in June 1987. The record does not indicate that the original GAL in this case was employed by the office of the public guardian. It is therefore possible that even if the fee request could be collateral to less than the entire proceeding, the fee request at issue may be collateral to proceedings after the dispositional order, rather than the proceedings leading up to the order.

Furthermore, the public guardian fails to identify any time it could have properly brought its fee request other than as collateral to the dispositional order. The plain language of section 2—17(5) of the Act authorizes the trial court to award attorney fees to a GAL, but is silent on the issue of *when* such fees are to be awarded. The public guardian has not cited any circuit court rule or court order governing the proper time for filing a fee request in this case.

We recognize that the supreme court rules regarding the right to appeal are to be liberally construed (*Parks v. McWhorter* (1985), 106 Ill. 2d 181, 185, 478 N.E.2d 324, 325-26), but Rule 304 is to be liberally construed in order to effectuate its overall purpose of preventing piecemeal appeals. See *Hawthorn-Mellody Farms Dairy, Inc. v. Elgin, Joliet & Eastern Ry. Co.* (1958), 18 Ill. App. 2d 154, 151 N.E.2d 393.

For all of the aforementioned reasons, we dismiss the appeal for want of jurisdiction.

Appeal dismissed.

BUCKLEY and O'CONNOR, JJ., concur.