WARREN E. NIEBURG, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 522, Defendant-Appellee.

Fifth District   No. 5—90—0127

Opinion filed July 10, 1991.

G. Richard Jones and Charlene N. Kass, both of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellant.

Michael J. Reagan, of Kassly, Bone, Becker, Dix, Reagan & Young, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Warren E. Nieburg, filed a complaint on January 28, 1982, against defendant, Board of Trustees of Community College District No. 522 (Board), for an alleged breach of contract. Plaintiff claimed that he had "retired" from his position with Belleville Area College (BAC) and was entitled to certain benefits. Defendant filed a motion for summary judgment arguing that plaintiff had not "retired" and was not entitled to all the benefits claimed. The trial court granted defendant's summary judgment motion, but on an earlier ap-

peal this court concluded that the contract term "retirement" was ambiguous and that summary judgment was inappropriate. (*Nieburg v. Board of Trustees* (1987), 163 Ill. App. 3d 1163, 529 N.E.2d 105 (unpublished order pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23).) The cause was remanded to the trial court for further proceedings. On remand the trial court entered judgment in favor of the defendant after a bench trial. Plaintiff appeals and presents the following issues:

(1) Whether the trial court erred in finding that an accord and satisfaction occurred.

(2) Whether the trial court erred when it refused to admit evidence relating to the retirements of Drs. Stone and Washburn to determine the meaning of the contract term "retirement."

(3) Whether the trial court's conclusion that plaintiff had not "retired" was against the manifest weight of the evidence.

We affirm the trial court's ruling on the first of these issues and, therefore, need not consider the others.

The plaintiff began his employment with BAC on August 17, 1970, and worked as an administrator until November 4, 1981. On October 5, 1981, he submitted a letter indicating that he was "retiring" in 30 days. Plaintiff claimed benefits under his most recent two-year contract as a professional services administrator which was dated December 1, 1979. Terms and conditions of his employment were designated in the "Personnel Policies for Administrators" and approved by the Board. The relevant portion of these policies provided:

"III. Sick Leave.

A. Each Administrator shall receive credit for one and one-third days of sick leave for each month of service to the district.

B. The accumulation of sick leave shall be unlimited.

C. Sick leave may be used at full pay for illness, disability, quarantine, treatments, and diagnostic examination of his person or family.

D. Upon retirement or death, the administrator or his beneficiary shall receive compensation for his accrued sick leave at the rate of 100% of the cash value of his current daily salary to a maximum of 100 days.

E. Any administrator whose employment is terminated, either voluntarily or involuntarily, shall receive compensation equivalent to 20% of his accrued sick leave to a maximum of 20 days."

Plaintiff's October 5 letter (plaintiff's exhibit 3) provided in part:

"Please accept this letter as a petition that I may be released from my contract with the Board of Trustees 30 days from the date you receive this letter.

Please be advised that I am retiring from my profession and entering upon retirement effective upon my severance from your institution. Please be further advised that I do claim, therefore, compensation for my accrued sick leave at the rate of 100% of the cash value of my current daily salary to a maximum of 100 days as provided under VII [*sic*] D.

I further claim, under VII [*sic*] E, separation compensation equivalent to 20% of my accrued sick leave to a maximum of 20 days in view of the fact that my employment as an administrator is, with this letter, terminated, voluntarily.

Of course, I expect to receive my vacation pay for 92 days and for compensatory time in the amount of 5 days."

Dr. Wissore, BAC president, informed plaintiff by letter on October 22, 1981, that he was not entitled to the full 120 days of accrued sick leave because he was not eligible to retire. The October 22 letter (plaintiff's exhibit 4) provides as follows:

"Your request to be released from your current contract effective November 4, 1981[,] is accepted. We regret to inform you that you do not qualify for the 100 percent accrued sick leave compensation provided for in the current PERSONNEL POLICIES FOR ADMINISTRATORS because you are not at this time eligible for retirement benefits under the State Universities Retirement System. The 100 percent accrued sick leave compensation provision is set forth in Paragraph III-D of the current PERSONNEL POLICIES FOR ADMINISTRATORS.

You do, however, qualify for the 20 percent accrued sick leave separation compensation provided for in the current PERSONNEL POLICIES FOR ADMINISTRATORS. The 20 percent accrued sick leave separation compensation provision is set forth in Paragraph III-E of the current PERSONNEL POLICIES FOR ADMINISTRATORS.

The compensations set forth in Paragraphs III-D and III-E are, of course, mutually exclusive; thus, it is not possible under any circumstances for an individual to qualify for benefits under both Paragraph III-D and Paragraph III-E so as to be entitled to compensation for a maximum 120 days of accrued sick leave. You will be paid vacation pay for 92 days and compensatory time for five days."

On November 30 plaintiff received a check in the amount of $3,869.27 which he subsequently cashed. Plaintiff asserted at trial that before cashing the check he informed Carol Blue, a BAC payroll accountant, that he considered the check to be only a partial payment of his claim.

■■ ■ An accord is an agreement or settlement of an existing dispute or controversy which presupposes a disagreement over the amount due (*Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567.) When there is an honest dispute between the parties, a tender by the debtor, with the explicit understanding of both parties that the tendered amount is in full payment of all demands, and an acceptance of that amount by the creditor constitutes an accord and satisfaction. (*Nelson v. Fire Insurance Exchange* (1987), 156 Ill. App. 3d 1017, 1020, 510 N.E.2d 137, 139, *appeal denied* (1987), 116 Ill. 2d 562.)

> "If there is a *bona fide* dispute as to the amount due, it makes no difference that the creditor protests that he does not accept the amount in full satisfaction. The creditor must either accept the payment with the condition or refuse." (*Nelson*, 156 Ill. App. 3d at 1020, 510 N.E.2d at 139.)

The fact that a creditor does not wish to consider a check as full payment does not mean that he did not understand that the check was offered to him with the condition that it was being made in full payment. *Nelson*, 156 Ill. App. 3d at 1020, 510 N.E.2d at 140.

■■ We conclude that the trial court properly determined that an accord and satisfaction occurred. The letters set forth earlier clearly reveal that there was an honest dispute over the number of accrued sick-leave days that plaintiff was entitled to receive. Plaintiff claimed that he was entitled to 120 days while the board believed that he was entitled to only 20 days. Also, there was clearly evidence to support the trial court's finding that plaintiff accepted the check with the understanding that it was offered by the Board in full payment of the claim. We note that the original payout to plaintiff was $18,186. Plaintiff requested that approximately $12,000 of this amount be placed in a tax-sheltered annuity and that approximately $2,500 be withheld for State and Federal income taxes and for the State university retirement system. After these deductions were made, the gross amount of the check was $3,869.27. Plaintiff testified that he was aware before cashing the check that the amount covered only 20 sick days. Furthermore, plaintiff testified as follows:

> "Q. Now, before you accepted this check from the college, which is Defendant's Exhibit G, you also received Defendant's Exhibit E, which is the letter from Dr. Wissore; is it not? In

fact, it was referred to as Plaintiff's Exhibit 4 for clarity sake. Let me withdraw my exhibit. Your attorney put into evidence Plaintiff's Exhibit 4; do you recall that?

A. Yes.

Q. All right. And do you agree that that letter makes it eminently clear that the position of the college is that you only get 20 sick days, and you don't get 20 sick days plus 80 sick days or 20 sick days plus 100 sick days?

A. This letter here was written after my letter of October the 5th.

Q. I understand that.

A. So it makes it eminently clear how they interpret the contract.

Q. All right. And after they sent you their letter indicating how they interpreted the contract, you accepted the benefits of their check dated November 30, 1981[,] in which you received only 20 sick days, isn't that correct?

A. After conferring with the attorneys that is correct.

Q. All right.

A. But it in no way in following up indicates—and I want to reiterate this at the risk of being repetitious—that that was acceptance of any and all just payment."

Plaintiff also alleged that he informed Carol Blue that his cashing the check was not a waiver of his claim to the full 120 days.

While the check was not notated "payment in full" by defendant, plaintiff's testimony set forth above clearly reveals that he understood that it was being tendered as full payment of his claim. The fact that plaintiff did not wish to consider the check as payment in full does not mean that he did not understand that it was offered to him in full payment. (*Nelson*, 156 Ill. App. 3d at 1020, 510 N.E.2d at 140.) Plaintiff incorrectly equates the understanding element of accord and satisfaction with assent. *Nelson*, 156 Ill. App. 3d at 1020, 510 N.E.2d at 140.

Plaintiff argues that he has two claims against defendant; one for 20 days and another for 100 days. He argues that defendant simply paid him for the undisputed 20 days and that his claim for the additional 100 days survives. We disagree.

Plaintiff cites *Quaintance Associates, Inc.*, 95 Ill. App. 3d 818, 420 N.E.2d 567, and *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 477 N.E.2d 513, in support of his position. However, his reliance on these cases is misplaced. These cases stand for the proposition that partial payment of a fixed

and certain demand which is due and not in dispute is not satisfaction of the whole debt even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand. *Quaintance Associates, Inc.*, 95 Ill. App. 3d at 821-22, 420 N.E.2d at 569-70; *W.E. Erickson Construction, Inc.*, 132 Ill. App. 3d at 269, 420 N.E.2d at 520-21.

In this case there was no partial payment of a fixed and certain demand which was undisputably due. Plaintiff claimed that he was entitled to 120 days' accrued sick leave, while defendant argued that he was only entitled to receive 20 days. Defendant made its position clear to plaintiff and tendered the check for 20 days which plaintiff negotiated. The trial court found that this was a payment of a disputed debt and not a partial payment of an undisputed debt, and that finding is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK, P.J., and LEWIS, J., concur.