2026 IL App (1st) 240952

SECOND DIVISION
May 12, 2026

No. 1-24-0952

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF BASAVAPUNNAMMA K. RAO, | ) | |
| | ) | |
| Deceased. | ) | Appeal from the |
| | ) | Circuit Court of |
| (Padma Rao, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | No. 13 P 6243 |
| v. | ) | |
| | ) | Honorable |
| Midland Trust Company and Anita Rao, | ) | James P. Murphy, |
| | ) | Judge Presiding |
| Respondents-Appellees). | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1 After more than a decade, the circuit court finally closed the estate of Basavapunnamma K. Rao. On the day it did so, it entered two separate orders. One resolved several outstanding issues; the other distributed the remaining assets of the estate. A daughter of the deceased, Padma, filed a motion to reconsider the distribution order but did not challenge or even mention the other order in that motion to reconsider. Nor did she file a notice of appeal regarding either order until the court denied her motion to reconsider.

¶ 2 Padma appeals several aspects of each of these orders, along with a 2020 order denying her motion for sanctions. For the following reasons, we dismiss this appeal in part, affirm the

circuit court's judgment in part, vacate it in part, and remand for a recalculation of the final distribution and a determination of attorney fees.

¶ 3                                    BACKGROUND

¶ 4      This represents yet another appeal in the decade-long saga of Basavapunnamma K. Rao's estate (the "Estate"). The facts of this case are well known to the court and more fully explained in our three prior written decisions, decided by a different panel of this court, appeals all brought by Padma: *In re Estate of Rao*, 2022 IL App (1st) 210316-U (*Rao I*); *In re Estate of Rao*, 2023 IL App (1st) 220055-U (*Rao II*); and *In re Estate of Rao*, 2023 IL App (1st) 220333-U (*Rao III*). (Padma filed another appeal that was dismissed for lack of standing in an order.) We relate only those facts necessary to understand the issues before us.

¶ 5                                    I. Case History

¶ 6      Basavapunnamma K. Rao died in 2013, leaving her daughters Padma (the appellant here) and Anita (an appellee) as equal (50/50) beneficiaries of the Estate. Padma was the initial administrator. Early in the process, as administrator, Padma brought a wrongful-death claim against the hospital and medical providers who treated her mother before her death.

¶ 7      The parties ultimately settled the wrongful-death suit for $2.1 million. When it came time for the court to approve that settlement, Padma objected, claiming—for the first time—that the settlement violated her religious beliefs. Largely because of this objection, Anita filed a motion to remove Padma as administrator and convert the Estate to supervised administration. The court granted the motion, finding that Padma was unable to discharge her duties as administrator and had engaged in waste and mismanagement. Appellee Midland Trust Company (Midland) was appointed as the successor administrator. Following Midland's appointment and over Padma's continued objection, the court approved the settlement of the wrongful-death suit.

¶ 8      Over the next several years, Padma resisted Midland at nearly every turn. First, in 2019, she appealed the circuit court's order denying her motion to vacate the settlement agreement. *Rao I*, 2022 IL App (1st) 210316-U, ¶ 19. We dismissed the 2019 appeal for lack of standing in a one-sentence minute order. See *In re Estate of Rao*, No. 1-19-1427 (Feb. 20, 2020) (unpublished minute order under Illinois Supreme Court Rule 23(c)). "Undeterred, Padma filed a petition for rehearing in this court, a petition for leave to appeal in the Illinois Supreme Court, a petition for writ of *certiorari* in the United States Supreme Court, and a petition for rehearing regarding the denial of the petition for writ of *certiorari*." *Rao II*, 2023 IL App (1st) 220055-U, ¶ 6; see *In re Estate of Rao*, No. 1-19-1427 (2020), *cert. denied*, *Rao v. Midland Trust Co.*, 141 S. Ct. 2626 (May 17, 2021) (No. 20-1254).

¶ 9      Another example relevant to this appeal: in March 2020, Midland filed a "Report to the Court and Request for Direction." In that report, Midland detailed Padma's delay in filing a court-ordered accounting of the Estate following her departure as the administrator. Once Padma did file her accounting, Midland believed it "was incomplete and created questions as to whether [the Estate] was properly administered." For example, Midland identified two Chase accounts that did not appear on Padma's accounting. Midland requested more information; Padma responded that they "were payable on death ('POD') and therefore not assets of the estate."

¶ 10      When Midland was finally able to obtain verification that the accounts *were* POD, it became concerned about self-dealing. Based on the information available, it appeared the paperwork making Padma the beneficiary "[was] executed by Padma, on behalf of B.K., as the agent under B.K.'s Power of Attorney for Property, naming *herself* as the POD beneficiary." Obviously, this raised serious concerns in Midland's mind about whether Padma had abused her authority over the Estate's assets.

¶ 11    In April 2020, it appears Midland finally received the documentation that showed that the POD beneficiary was changed to Padma *prior* to her becoming the power of attorney. Over the course of a few weeks, Padma's counsel attempted to get Midland to "withdraw" the allegation. When that didn't work, she filed a Rule 137 motion for sanctions in late April. The motion claimed that Midland and its counsel utterly failed to conduct a reasonable inquiry into the "false, cruel and defamatory accusation[s]" in the March report. The motion for sanctions sought fees and damages against Midland and its counsel.

¶ 12    In June, Midland filed a supplement to the March 2020 report that omitted the claims against Padma. The supplemental report acknowledged that Padma's attorney, for the first time in April 2020, supplied it with information that confirmed that Padma was the legitimate POD beneficiary. It reported that its prior understanding was based on information it had obtained from a trusted contact within Chase.

¶ 13    The supplement admitted that, "[a]lthough counsel for [Midland] performed its due diligence with Chase to obtain accurate information and documentation, unfortunately such information and document [*sic*] provided by Chase was incorrect, but which was only discovered after a *third* meeting with Chase." (Emphasis in original.) Because it now had the correct information, Midland "request[ed] that the March 16, 2020 Report to Court and Request for Direction be *supplemented* to identify that the Chase Accounts, as of BK's death, recognize Padma as the POD Beneficiary." (Emphasis in original.)

¶ 14    Despite the supplement, Padma persisted in her request for Rule 137 sanctions. In August, the court denied the motion. In its oral ruling, the court explained that "my failure to enforce [the accounting orders] and Padma's willingness to disobey them essentially compelled [Midland and its counsel] to investigate their own accounting objection, which is backwards."

The court believed that this caused the confusion regarding the POD accounts. The court concluded that Midland and its counsel "conducted themselves appropriately here with due diligence and in good faith; and they reasonably [relied] upon documents from a bank that turned out to be wrong, but I don't believe that's through any fault of [their own.] So the motion is respectfully denied."

¶ 15    Near the end of 2020, Anita sought to shift the burden of the Estate's fees to Padma, alleging that "Padma Rao's behavior has been unnecessary, irrational, unpredictable, wasteful, and unfair." In a detailed written order, the circuit court, under the doctrine of equitable contribution, assessed against Padma the Estate's costs incurred in defending Padma's attempt to overturn the wrongful-death settlement.

¶ 16    Later, in *Rao I*, 2022 IL App (1st) 210316-U, ¶ 59, we affirmed the court's allocating fees to Padma under the equitable contribution doctrine and affirmed several fee awards. Among them, we upheld the award to Padma of $37,500 in administrator fees. *Id.* ¶¶ 68-70.

¶ 17    After Padma's 2019 appeal, Midland continued its administration of the Estate and sought more fees. In the attorney fee petition, Midland's counsel, FMS Law Group, or "FMS," sought "(1) FMS's fees for defending its prior petition for fees; (2) FMS's fees for responding to Padma's petition for writ of *certiorari* in the United States Supreme Court; and (3) FMS's fees for attempting to negotiate a settlement with Padma." *Rao II*, 2023 IL App (1st) 220055-U, ¶ 7. In its petition for fees, "FMS billed approximately $55,000 worth of attorney time for responding to Padma's petition for writ of *certiorari*." *Id.* ¶ 8.

¶ 18    When Padma appealed that order, the majority decision "seriously question[ed] the prudence of responding to Padma's petition *at all*." *Id.* ¶ 22 (emphasis in original). We vacated the award of fees, finding that the response to the petition for writ of *certiorari* "overlaps

substantially with FMS's answer to Padma's petition for leave to appeal in the Illinois Supreme Court. FMS cannot bill multiple times for performing substantially the same work." *Id.* ¶ 21. We remanded the matter so the circuit court could "determine the amount of duplicative work performed and take that into consideration in reducing FMS's fee award." *Id.*

¶ 19                                    II. Post-*Rao II*

¶ 20     After our decision in *Rao II*, the parties returned to court to wrap up the Estate and relitigate the issue of FMS's fees. Per our mandate, FMS submitted a new fee petition for defending the writ of *certiorari*. The trial court reconsidered its prior fee award and concluded that "the fair amount of fees is 35,000. *** I think 35,000 is a fair amount after my comparison of the two responses, the duplication and the propriety of filing the response, 35,000."

¶ 21     Aside from challenging attorney fees, Padma also filed petitions, on behalf of the Estate, to recoup (1) profits Midland allegedly made based on investing the Estate's funds in its own financial instruments and (2) a portion of the executor fee we affirmed in *Rao I* based on its alleged "illegal investments in its own financial instruments." The court would go on to deny both motions, concluding that Midland had not engaged in self-dealing: "Well, [Midland] is telling me they didn't make any profit or benefit. I'm going to accept that. If they are telling me they didn't benefit on how they held the money, then I'm going to accept that representation."

¶ 22                                  III. December 15 Orders

¶ 23     Finally, on December 15, 2023, the court entered two separate orders that are the subject of this appeal. The first was a two-page order, which we call the "Fee Order" as Padma does. The Fee Order resolved the remaining substantive issues, including striking Padma's responses to several motions as untimely, granting FMS $35,000 in attorney fees related to responding to

Padma's writ of *certiorari* (as discussed above), finding that the FMS law firm was entitled to an additional "reimbursement" of $6,980, and denying Padma's motions for recoupment.

¶ 24    We will call the second order the "Distribution Order." As many orders finally closing an estate will do, that order divided the remainder of the estate and contained language ordering Midland to remit funds consistent with the Fee Order. The court found that the Estate had a balance of "$1,090,370.79" and awarded Anita "$552,825.92," while Padma received "$364,645.34." The court reached this lower amount for Padma by deducting "$151,649.53" for "Court-approved fees/expenses," which it had detailed earlier in the order (many of which were established by the Fee Order). The Distribution Order then declared the Estate closed.

¶ 25    Finally, the Distribution Order set aside $21,250 from the estate "for any and all services of FMS related to finalizing the administration of the Estate, including but not limited to answering any and all prospective appeals filed by Padma Rao objecting to this Court's Order related thereto." The order provided that this money would go to Padma if she did *not* appeal these orders and to FMS, for any legal services rendered in defending the appeal, if she did.

¶ 26                             IV. Padma's Motion to Reconsider

¶ 27    On January 16, 2024, Padma filed her "Motion to Reconsider this Court's Order of December 15, 2023." Though it might appear otherwise, that motion was timely filed within 30 days of the December 15 order because the thirtieth day was a Sunday, and the thirty-first day, January 15, 2024, was Martin Luther King Day, a state holiday. See 5 ILCS 70/1.11 (West 2024) (holidays and weekends excluded from filing deadlines); *Chellappa v. Summerdale Court Condominium Ass'n*, 2026 IL App (1st) 240415-U, ¶ 55.

¶ 28    Critically, the motion to reconsider was not directed at both orders entered on December 15. It was only directed at the Distribution Order. Padma argued that the court made various

mathematical errors in its distribution and generally erred in closing the Estate.

¶ 29     On March 27, 2024, the circuit court denied Padma's motion to reconsider. On April 26, 2024, Padma filed her notice of appeal. Her notice of appeal raised various challenges to *both* orders entered on December 15, as well as the court's order years ago that denied her Rule 137 motion for sanctions against Midland.

¶ 30                                   ANALYSIS

¶ 31     On appeal, Padma challenges various aspects of the Distribution Order, the Fee Order, and the 2020 denial of her Rule 137 motion for sanctions. But we begin by addressing various jurisdictional issues in this appeal.

¶ 32                                 I. Jurisdiction

¶ 33     Midland challenges our jurisdiction over virtually every judgment entered. Midland claims we lack jurisdiction to review (1) the Fee Order, (2) the order denying the Rule 137 motion for sanctions, and (3) certain parts of the Distribution Order. Padma, on the other hand, says that Midland is wrong on all counts—the timely filing of her post-judgment motion tolled the time for appealing all claims.

¶ 34      If this were a garden-variety civil case governed by traditional appellate rules, Padma would be right. Generally speaking, final judgments are not appealable until all claims of all parties have been resolved. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). A final judgment is only appealable before that moment if the trial court makes a specific finding that no just reason exists to delay appealability of that judgment. *Id.*; see *Ely v. Pivar*, 2018 IL App (1st) 170626, ¶ 30; *In re Estate of Cerami*, 2018 IL App (1st) 172073, ¶ 32. And none of the orders challenged on appeal contained Rule 304(a) written findings.

¶ 35      But this is an estate case, so different rules apply. Under Illinois Supreme Court Rule

304(b)(1) (eff. Mar. 8, 2016), a final judgment "entered in the administration of an estate \*\*\* which finally determines a right or status of a party" is immediately appealable without a Rule 304(a) finding. Said differently, a Rule 304(b)(1) order *must* be appealed within 30 days, else the judgment is carved into stone. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 619 (2004) ("Orders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, must be appealed within 30 days of entry or be barred."); *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616 (1996) (same); *In re Estate of Devey*, 239 Ill. App. 3d 630, 633 (1993) (same).

¶ 36    Padma is quite familiar with this concept. She used Rule 304(b)(1) to file four previous appeals in this litigation, three resulting in published decisions, to varying degrees of success. See *Rao I*, 2022 IL App (1st) 210316-U, ¶¶ 50-51 (we had jurisdiction to review judgment awarding fees against estate under Rule 304(b)(1)); *Rao II*, 2023 IL App (1st) 220055-U, ¶¶ 13-14 (same); *Rao III*, 2023 IL App (1st) 220333-U, ¶¶ 12-13 (Padma improperly invoked Rule 304(b)(1), as order appealed was not final judgment).

¶ 37    While the general rule of Rule 304(a) disfavors piecemeal appeals, it is easy to understand why the opposite would be true in estate proceedings that can last years, if not a decade or more. If a judgment finally determines a party's right or status, that ruling could have a ripple effect through the remainder of the estate proceedings. If that judgment were not reviewed until years later, after the estate has been closed, a reversal of that judgment could unwind many years' worth of work, a result that is "both impractical and inefficient." *Estate of Thorp*, 282 Ill. App. 3d at 616-17. Better, instead, that this final judgment be appealed immediately—or *not* appealed, in which case all parties know the judgment is forever conclusive. See *In re Estate of Kime*, 95 Ill. App. 3d 262, 268 (1981) (reasoning behind Rule 304(b)(1) is that "certainty as to

some issues is a necessity during the lengthy procedure of estate administration").

¶ 38    So it should be clear from this discussion that each judgment order in an estate proceeding should be viewed on its own terms to determine whether it falls within Rule 304(b)(1) and thus requires an immediate appeal. See *Estate of Devey*, 239 Ill. App. 3d at 633 ("Not every order entered in an estate proceeding may (or more precisely, must) be immediately appealed."). It is not dependent on the finality of all claims or all parties, as Padma would argue under general appellate rules governed by Rules 303 and 304(a); it is dependent only on whether the judgment "finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). And that will not be every order.

¶ 39    Per the committee comments to Rule 304, judgments that finally determine a right or status of a party in an estate proceeding include orders "admitting or refusing to admit a will to probate, appointing or removing an executor, or *allowing or disallowing a claim*." (Emphasis added.) Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988). An example of the allowance of a claim is an award of attorney fees against the estate. *In re Trusts of Strange*, 324 Ill. App. 3d 37, 42 (2001); *Estate of Kime*, 95 Ill. App. 3d at 268. A disallowance of a claim would include, for example, a judgment that a party had no claim to specific property in the estate. *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 24.

¶ 40    On the other hand, while an award of attorney fees *against the estate* qualifies as a Rule 304(b)(1) judgment, an award of attorney fees in favor of one party against another party does not. In *People v. Herlinda M.*, 221 Ill. App. 3d 957, 961, 963-64 (1991), we held that Rule 304(b)(1) did not govern an award of fees to the public guardian that was imposed *not* against the estate but against the parents of two abused children. We reasoned that a fee award between parties was not an "ordinary claim like a claim against an estate" that ran the risk of causing the

"entire proceeding to be relitigated" if later overturned. *Id.* at 964. Because it had no impact on the estate itself, that judgment was not immediately appealable under Rule 304(b)(1).

¶ 41    With these principles in mind, we now review each judgment order at issue to determine if they fall within Rule 304(b)(1). If so, they were subject to immediate appeal. If not, then they became appealable only when all claims against all parties were resolved, per Rule 304(a).

¶ 42                              A. Distribution Order

¶ 43    We start with the Distribution Order, which has the unique distinction of being both a final judgment subject to Rule 304(b)(1) *and* the traditional final judgment that disposes of all claims against all parties. It makes no difference under which rule we categorize the Distribution Order, because the result is the same—we have jurisdiction to review it. We explain below.

¶ 44    Recall that this order awarded the final distributions to Anita and Padma before closing the estate. The order obviously "finally determine[d] a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). But by closing the estate after resolution of all outstanding claims, the Distribution Order also disposed of all pending claims against all parties, which made that judgment order appealable under Rules 303 and 304(a), as well.

¶ 45    It makes no difference which rule we invoke, as the jurisdictional rules are the same. A final judgment that disposes of all claims against all parties must be appealed "within 30 days after the entry of the final judgment appealed" or "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Appeals of Rule 304(b) final judgments follow the same process. See Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016) ("The time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303.").

¶ 46    Under either scheme, Padma had 30 days to file either a post-judgment motion directed at the Distribution Order or a notice of appeal. She chose the former, filing a motion to reconsider the Distribution Order. That motion was denied on March 27, 2024. She filed her notice of appeal 30 days later, on April 26. So we have jurisdiction to review the Distribution Order.

¶ 47    Midland argues that, because Padma's motion to reconsider challenged only some, not all, aspects of the Distribution Order, we have jurisdiction to review only those portions of the Distribution Order that she challenged post-judgment. But our jurisdictional rules don't work that way. The supreme court rules do not assign jurisdiction over issues or arguments; they assign them over judgments (Rules 301 to 304) or orders (Rules 306 or 307). The one exception to this principle is certified questions under Rule 308, but that has no application here.

¶ 48    Midland is conflating appellate jurisdiction with forfeiture. It is certainly true that in many instances, a party that fails to challenge a particular ruling post-judgment forfeits the right to challenge it on appeal. But forfeiture is a doctrine of issue preservation grounded in notions of fairness and judicial economy. It is not a jurisdictional doctrine, which is why the appellate court may excuse forfeiture but may *never* forgive jurisdictional defects. See *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 41 (forfeiture is not limitation on reviewing court); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 217-18 (2009) (appellate court may not excuse lack of jurisdiction).

¶ 49    We have jurisdiction to consider the Distribution Order in its entirety.

¶ 50                                    B. Fee Order

¶ 51    We lack jurisdiction to review the Fee Order. That order fell under Rule 304(b)(1). Thus, within 30 days, Padma was required to either file a post-judgment motion directed at that judgment or appeal it. She did neither.

¶ 52 There is no doubt that the Fee Order was a judgment that "finally determine[d] a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). As noted earlier, among other things, that order granted the law firm FMS $35,000 in attorney fees and additionally reimbursed FMS in the amount of $6,980. That order also denied Padma's attempt to recoup money from the administrator to be put back into the estate. Each of those rulings "allow[ed] or disallow[ed] a claim" against or on behalf of the estate. Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988); see *Strange*, 324 Ill. App. 3d at 42; *Estate of Kime*, 95 Ill. App. 3d at 268.

¶ 53 As such, a 30-day clock began to tick on Padma's right to appeal the Fee Order. She did not appeal it or file a post-judgment motion directed at that judgment within 30 days.

¶ 54 Padma may not bootstrap the Fee Order onto the Distribution Order, regardless of the fact that they were entered on the same day. It should be clear by now from our discussion that each final judgment entered in an estate case is to be examined on its own terms to determine whether (1) it falls under Rule 304(b)(1), in which case it is subject to immediate appeal, or (2) it does not fall under Rule 304(b)(1), in which case it would be treated like any other final judgment under Rule 304(a)—*not* appealable until all claims against all parties are resolved, absent the required written findings under Rule 304(a). See *Estate of Devey*, 239 Ill. App. 3d at 633.

¶ 55 As Padma neither appealed nor filed a post-judgment motion directed at the Fee Order within 30 days of its entry, we lack jurisdiction to review that final judgment. *Jackson*, 354 Ill. App. 3d at 619; *Estate of Thorp*, 282 Ill. App. 3d at 616; *Estate of Devey*, 239 Ill. App. 3d at 633.

¶ 56                             C. Denial of Motion for Rule 137 Sanctions

¶ 57 Finally, Padma seeks our review of the denial of her motion for Rule 137 sanctions against Midland, an order entered back in 2020. We discussed this earlier in the background and will get to the details in a moment, but suffice it for now to say that Padma sought Rule 137

sanctions against Midland—not the Estate but Midland—for defaming her in one of its administrator's reports to the court. The circuit court denied that motion in 2020.

¶ 58 We have jurisdiction to review that judgment, as it did not fall within Rule 304(b)(1). That order did not finally determine the rights of any party, nor did it impact the Estate in any way; any sanctions would have come out of Midland's and its counsel's pockets. Just as an award of attorney fees against one party in favor of another party is not subject to Rule 304(b)(1) because it does not impact the estate (see *Herlinda M.*, 221 Ill. App. 3d at 961, 963-64), the denial of the Rule 137 motion here did not fall under Rule 304(b)(1).

¶ 59 So that final judgment was like any other final judgment under Rule 304(a)—it was not appealable until all claims against all parties had been resolved (absent written findings under Rule 304(a)). All claims against all parties were not resolved until the denial of Padma's post-judgment motion directed at the Distribution Order, which was entered on March 27, 2024. She filed her notice of appeal, including in that notice the denial of her Rule 137 motion, on April 26, 2024. Her notice of appeal was timely. We have jurisdiction to consider that judgment.

¶ 60 II. The Order Denying Rule 137 Sanctions

¶ 61 We now turn to the merits and begin where we just left off—the denial of Padma's Rule 137 sanctions motion directed at Midland. Recall that the motion for sanctions stemmed from a report to the court that Midland prepared, suggesting improprieties on the part of Padma while she served as administrator (before Midland replaced her). See *supra* ¶¶ 10-15. Those improprieties were later debunked, and Padma sought sanctions against Midland for its "defamatory" accusations. The court ultimately denied the motion, finding that Midland's mistake was in good faith.

¶ 62    Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018) authorizes a court to impose sanctions against a party if that party files a signed document or pleading that, "to the best of his knowledge, information, and belief formed after reasonable inquiry," is not "well grounded in fact" or that is filed "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The purpose of Rule 137 is "to penalize the litigant or attorney who pleads false or frivolous matters, or who brings suit without any basis in the law." *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 108 (1998). We review the circuit court's decision for an abuse of discretion. *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963 (2001). A trial court abuses its discretion when no reasonable person would adopt the view of the trial court. *Schneider*, 298 Ill. App. 3d at 109.

¶ 63    As noted earlier, Midland filed a report in March 2020 suggesting that Padma had engaged in self-dealing while administrator, thus abusing her authority over the estate's assets. In June 2020, Midland filed a supplemental report explaining that its suspicions had proven unfounded, based on faulty information from a bank, a concession that exonerated Padma. By then, Padma had already moved for sanctions.

¶ 64    The court denied that motion, as it found that Midland was properly acting on information provided by Chase Bank. The court concluded that Midland and its counsel "conducted themselves appropriately here with due diligence and in good faith; and they reasonably [relied] upon documents from a bank that turned out to be wrong, but I don't believe that's through any fault of [their own.] So the motion is respectfully denied."

¶ 65    Padma argues that, at a minimum, Midland didn't respond fast enough once it determined that its concern was unfounded. She is correct that " 'Rule 137 contains an implicit requirement that an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded.' "

*Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 48 (quoting *Rankin v.*

*Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001)). But within a few weeks, Midland corrected its

mistake—one created by a third-party bank, not Midland—in its supplemental report. The court

could have reasonably found, as it did, that Midland acted with due diligence and in good faith at

all times. We could not possibly find an abuse of discretion in that ruling.

¶ 66                          III. The Distribution Order

¶ 67    Padma raises several challenges to the Distribution Order. Before we reach them, we

consider Midland's argument that Padma is barred from raising these challenges under various

doctrinal hurdles.

¶ 68                   A. Accord and Satisfaction or Equitable Estoppel

¶ 69    Midland and Anita claim that Padma's entire appeal should be dismissed under the

doctrines of accord and satisfaction or equitable estoppel. Their argument is simple enough:

because Padma accepted her final distribution from the Estate, she is precluded from challenging

the order giving her that distribution. This argument fails under either theory.

¶ 70    "An accord and satisfaction is a contractual method of discharging a debt or claim."

*Saichek v. Lupa*, 204 Ill. 2d 127, 135 (2003). As Padma is quick to point out, there is nothing

contractual about this case. The core principle of the doctrine is that the parties have "a *shared*

*and mutual* intent to compromise." *Id*. at 136 (emphasis added). It is effectively a settlement

agreement. *Nieburg v. Board of Trustees of Community College District No. 522*, 217 Ill. App.

3d 169, 173 (1991). The doctrine is inapplicable where the parties did not agree to settle their

dispute. *Saichek*, 204 Ill. 2d at 136. As there is no contractual claim here or an attempt at

settlement, accord and satisfaction has no application.

¶ 71 Equitable estoppel could apply to estate cases under the proper circumstances, but not here. True, "there is a general principle of equity which holds that once one accepts some benefit, one cannot then challenge the validity of the thing by which the benefit was conferred." *In re Estate of Boyar*, 2013 IL 113655, ¶ 40. But the "thing" that conferred a "benefit" on Padma was not the Distribution Order; it was her mother's will. She is not challenging the validity of the will. She is challenging the court's Distribution Order, an entirely different matter altogether. See *Cleland v. Cleland*, 2018 IL App (2d) 170949, ¶¶ 40-41 (equitable estoppel did not apply to tortious-interference count because it was not aimed at validity of trust, but estoppel *did* apply to claim for rescission that sought to invalidate trust).

¶ 72 Neither doctrine precludes our consideration of the merits of the Distribution Order.

¶ 73 B. The Distribution Order

¶ 74 Padma raises three challenges to the Distribution Order. We start with an overview. Recall that, before closing the Estate, the court found that the Estate had a balance of $1,090,370.79 and awarded Anita $552,825.92, while Padma received $364,645.34. The court reached this lower amount for Padma by deducting $151,649.53 for "Court-approved fees/expenses," which it had detailed previously. Finally, the court set aside $21,250 for a fee award to FMS in the event that Padma appealed any or all remaining orders (as, of course, she has). The math to zero out the Estate looked like this:

| Balance of Estate as of 6/30/2023: | $1,090,370.79 |
|---|---|
| Court-approved fees/expenses (to be deducted from Padma's share): | ($151,649.53) |
| Fees for future Padma appeal (to be deducted from Padma's share): | ($21,250) |

| Anita's Final Distribution: | ($552,825.92) |
| Padma's Final Distribution: | ($364,645.34) |
| Balance of Estate: | $ 0.00 |

¶ 75    Padma has three arguments. First, the "court-approved fees/expenses" allocated to her (line 2 above) included her administrator fee of $37,500, which should have been an Estate expense taken off the top and certainly not deducted solely from Padma's share. Second, the court erred as a matter of law in provisionally deducting from Padma the Estate's legal fees for this appeal (line 3)—money that would go to Padma if she did *not* appeal. And third, based on an error that will require some explanation, the court improperly (though inadvertently) assigned all the income tax paid by the Estate to Padma instead of taking that cost off the top of the Estate before dividing the Estate equally. As we explain below, we agree with each of Padma's arguments and thus vacate the Distribution Order.

¶ 76                                     1. Administrator Fee

¶ 77    It is undisputed, and just common sense, that the administrator's fee was a cost of the Estate and thus a cost to be taken off the top of the Estate balance before final distribution to the heirs. It would make no sense at all for only one of the two heirs to bear this cost. But however complex and somewhat confusing the Distribution Order may be, there is almost no denying that Padma's administrator fee of $37,500 was deducted from Padma's share alone. (Or, at best, it was taken off the top initially and then deducted *a second time* from Padma's share alone.)

¶ 78    The math is easy. As detailed in line 2 of the chart above, the court deducted $151,649.53 in fees and expenses from Padma's distribution based on unnecessary litigation that Padma forced the Estate to endure. But a breakdown of the fees and expenses incurred by the law firm

FMS for various legal work, which the court allocated to Padma, were (1) $35,000; (2) $6,980; (3) $55,967.78; and (4) $16,201.75. Add those numbers and you don't get the $151,649.53 total that the court assessed to Padma; you get $114,149.53. The difference between those numbers? $37,500, the exact amount of Padma's administrator fee.

¶ 79    To be clear, the Distribution Order never explicitly *said* it was adding Padma's administrator fee to the fees and expenses deducted from Padma's share. But even if this is simply the most incredible of coincidences, we are left with a gap of $37,500 in fees and expenses deducted from Padma's share without explanation. One way or the other, the court's calculations of fees and expenses deducted from Padma's share was erroneous.

¶ 80    Midland, in its brief, claims that it *did* take the $37,500 administrator fee to Padma off the top before splitting the Estate between the two sisters. That may well be true. But if it is, Midland apparently deducted it a second time from Padma's share alone—or, if nothing else, a mystery sum of $37,500 was deducted from Padma's share for no reason we can understand. As we are remanding for a re-calculation, we don't need to solve this puzzle. However it came out, the calculation of fees and expenses deducted from Padma's share was in error.

¶ 81                              2. Set-Aside for Future Attorney Fees

¶ 82    Padma next challenges the court's set-aside of $21,250 in attorney fees to litigate any appeal Padma might file. The circuit court predicted that Padma, who had proven quite litigious, to say the least, would appeal the Distribution Order and was hopeful that the case would not return for yet another remand. So the court did its best to estimate, based on the prior appeals, what it would cost Midland to defend a future appeal by Padma and for Midland to take final completion steps to wrap up the Estate. That estimate was $21,250. The court set that sum of

money aside, to be paid to the law firm FMS in the event that Padma appealed; if she chose not to appeal, that money would go to Padma.

¶ 83    We are sympathetic to the trial court, whose patience had worn thin with Padma. The court recognized that the provisional set-aside of fees had "never been done before as far as I can see" but stated that "there's got to be a way to end the madness" of never-ending, "self-perpetuating" litigation and appeals. We also understand that the set-aside of $21,250 for Midland's lawyer was quite low, as it included not only future appellate litigation fees but also legal work in the administration of the Estate that had already occurred to the tune of $13,000. Still, we cannot uphold this set-aside for two reasons.

¶ 84    First, it declared a winner in advance. Attorney fees for the Estate's lawyer would generally be a cost borne by the Estate, not an individual heir, unless the court determined (as it did several times with Padma here) that one heir was raising frivolous or unnecessary litigation, thus shifting the fees to one party under the doctrine of equitable contribution. See *In re Estate of Elias*, 408 Ill. App. 3d 301, 324 (2011). The court could not possibly know in advance whether Padma would raise meritorious versus frivolous claims in this appeal. And indeed, she has prevailed, at least in part, on her challenge to the Distribution Order.

¶ 85    By allocating this litigation cost against Padma's share—either she doesn't appeal and keeps it, or she does appeal and pays it—the court was prejudging the viability of Padma's appeal and determining in advance that she, and she alone, should bear the costs of that appeal to the Estate under the doctrine of equitable contribution.

¶ 86    A more draconian view is that this order provided a financial incentive to Padma to forgo her right to an appeal, something we cannot countenance. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) ("Every final judgment of a circuit court in a civil case is appealable as of right.").

¶ 87    A second problem is that the court did not award *reasonable* fees; it fixed a specific sum it prejudged, in advance, as reasonable. The court could not have known, down to the dollar and cent, the amount of reasonable fees Midland's lawyer would incur. We understand the court was likely low-balling the fee award, as the court said—and again, we are sympathetic to the court's exhaustion with Padma—but we are aware of no authority that permits the award of attorney fees that have been pre-approved as "reasonable" by the court.

¶ 88    We are not saying a court may not reserve money for attorney fees when closing estates, with a provision that any remaining amount, after the award of reasonable attorney fees, be split among the parties. But setting aside an amount to cover reasonable fees, subject to a later fee petition, is one thing; setting that fee award in stone, before the legal work has begun, is another.

¶ 89    For those two reasons, we cannot uphold the provisional fee award as structured here.

¶ 90                    3. Deduction of Income Tax from Padma's Share Alone

¶ 91    Padma's final argument is that the court deducted the income tax the Estate paid in 2023 solely from Padma's share of the distribution, instead of taking it off the top before equally splitting the Estate. She is again correct. But this one takes some explaining.

¶ 92    When Midland replaced Padma as administrator in 2018, it identified the balance of the Estate and how much, in theory, both Anita and Padma should get. For each sister, that balance was $2,775,329.50. But let's focus on Anita for a moment.

¶ 93    Like her sister, Anita took several partial distributions from her share as the litigation over the Estate proceeded. Those interim distributions were in the amounts of $60,000 (April 2020), $1.266 million (March 2021), and $1 million (March 2023). So in theory, calculating Anita's final distribution in December 2023 (not counting interest and dividends from the Estate's investments over the years) is a simple matter of subtracting the three partial

distributions from her original share calculated in 2018 and coming to a final amount for distribution. That is precisely how Midland explains its calculation of Anita's final distribution share in the Distribution Order:

| Anita's share as of December 2018: | $2,775,329.51 |
|---|---|
| April 2020 Partial Distribution to Anita: | ($60,000.00) |
| March 2021 Partial Distribution to Anita: | ($1,266,403.94) |
| March 2023 Partial Distribution to Anita: | ($1,000,000.00) |
| Anita's share as of December 15, 2023: | $ 448,925.57 |

¶ 94    If you add interest and dividends from the Estate's investments over the years to that final number of $448,925.57 from 2018, you get the amount the court distributed to Anita in the Distribution Order: $552,825.92.

¶ 95    That's how Midland arrived at the number it suggested to the court for the final distribution. And that probably seemed logical. Midland believed there were no more costs that should be borne by the Estate between the years 2018 and the closing of the Estate in December 2023. All the litigation costs during that period, which *normally* would have been Estate costs, were deducted solely from Padma's share by the court due to her abusive litigation tactics. So all else being equal, that number for Anita calculated back in 2018, plus interest and dividends, should have been correct in the final distribution in December 2023. And if that number was correct for Anita, it would have made sense, presumably, for the remainder of the Estate to go to Padma, with the litigation expenses then taken out of her share only.

¶ 96    From what we can tell, that is exactly what Midland recommended and exactly what the trial court did in its Distribution Order: it took Anita's fixed number from 2018, plus interest and

dividends ($552,825.92) as gospel, gave Padma whatever remained, and then deducted litigation expenses from Padma's share only.

¶ 97    But it was wrong to just assign Anita that fixed number from back in 2018, because it failed to account for the income tax incurred in 2023—clearly an Estate expense that should have been borne equally by Padma and Anita. So even though Midland properly deducted the 2023 income tax expense off the top of the Estate—as is clear from the final accounting—Anita's share was unaffected by that deduction. That is the error Padma identifies.

¶ 98    In other words, Midland should have (1) deducted the income tax expense off the top of the Estate, (2) *divided the remaining money equally between Padma and Anita*, and (3) taken the litigation costs out of Padma's distribution only.

¶ 99    Instead, Midland (1) deducted the income tax expense off the top of the Estate; (2) *gave Anita that fixed number from 2018, plus interest and dividends ($552,825.92), and simply gave Padma whatever remained after Anita's share*; and (3) took the litigation costs out of Padma's distribution only. So Anita never had to account for her half of the income tax expense; Padma bore the entire share. That was error.

¶ 100   We thus vacate the Distribution Order and remand for a re-calculation based on the errors we have identified above. The trial court should reconsider whether Padma should be financially responsible for the cost of this appellate litigation, and whether it comes out of the Estate or out of Padma's share, the court should award reasonable attorney fees to Midland's counsel, FMS.

¶ 101                                CONCLUSION

¶ 102   We dismiss this appeal insofar as Padma challenges the Fee Order. We affirm the judgment denying Rule 137 sanctions against Midland. We vacate the Distribution Order of December 15, 2023, and remand for further proceedings.

¶ 103   Affirmed in part, vacated in part, and dismissed in part; cause remanded.

---

### *In re Estate of Rao*, 2026 IL App (1st) 240952

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-P-6243; the Hon. James P. Murphy, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael Steigmann, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | John N. Bielski II, of Bielski Chapman, Ltd., of Chicago, for appellee Anita Rao.<br><br>Mark R. Singler, Kathryn T. McCarty, and Richard J. Padula, of FMS Law Group LLC, of Chicago, for other appellee. |

---